USDC SCAN INDEX SHEET

















SMV   4/5/06   14:57

3:05-CV-02112   KEARNEY V. FOLEY AND LARDNER

*19*

*P/A.*

1  MARK C. ZEBROWSKI (CA SBN 110175)
   GREG A. KLAWITTER (CA SBN 222746)
2  MORRISON & FOERSTER LLP
   12531 High Bluff Drive, Suite 100
3  San Diego, California  92130-2040
   Telephone: 858.720.5100
4  Facsimile: 858.720.5125
   Email: MZebrowski@mofo.com
5

6  Attorneys for Defendants
   FOLEY AND LARDNER, LLP, GREGORY V. MOSER, AND
7  LARRY L. MARSHALL

8            UNITED STATES DISTRICT COURT

9           SOUTHERN DISTRICT OF CALIFORNIA

10

11 JOAN BROWN KEARNEY,                Case No.   05 CV 2112 L (LSP)

12            Plaintiff,              **MEMORANDUM OF POINTS
                                      AND AUTHORITIES IN
13      v.                            SUPPORT OF DEFENDANTS
                                      FOLEY AND LARDNER, LLP,
14 FOLEY AND LARDNER, a limited liability   GREGORY V. MOSER, AND
   partnership; GREGORY V. MOSER; LARRY L.  LARRY L. MARSHALL'S
15 MARSHALL; and MICHAEL T. McCARTY,  SPECIAL MOTION TO STRIKE
                                      PLAINTIFF'S FOURTH, FIFTH,
16            Defendants.             SIXTH AND SEVENTH CAUSES
                                      OF ACTION**
17
                                      **[C.C.P. § 425.16]**
18
                                      Date:      May 15, 2006
19                                    Time:      10:30 a.m.
                                      Judge:     Hon. M. James Lorenz
20                                    Location:  Courtroom 14

21

22

23

24

25

26

27

28

FILED

2006 APR -4  PH 1:07

SOUTHERN DISTRICT OF CALIFORNIA

BY_____DEPUTY

ORIGINAL

**TABLE OF CONTENTS**

Page

I.   INTRODUCTION .................................................................................................. 1

II.  SUMMARY OF ARGUMENT ............................................................................. 1

III. SUMMARY OF ALLEGATIONS AND PROCEDURAL BACKGROUND.................. 2

     A.   The Condemnation Action ......................................................................... 2

     B.   The Allegations Of The FAC Demonstrate Plaintiff Is Simply Attempting
          To Relitigate The Condemnation Action Issues Here.............................. 4

IV.  THE FOURTH THROUGH SEVENTH CAUSES OF ACTION MUST BE
     STRICKEN UNDER THE ANTI-SLAPP STATUTE ...................................... 6

     A.   The Anti-SLAPP Statue ............................................................................ 6

     B.   Step One:  Plaintiff's Fourth Through Seventh Causes Of Action Arise
          From Defendants' Conduct In Furtherance Of Their Right To Petition................ 7

     C.   Step Two:  As A Matter Of Law, Plaintiff Has No Chance Of Prevailing
          On The Fourth Through Seventh Causes Of Action............................... 8

          1.   The Noerr-Pennington Doctrine Immunizes Defendants From Any
               Liability On Plaintiff's Fourth Through Seventh Causes of Action ........... 9

          2.   The Litigation Privilege Bars Plaintiff's Fraud Claims ........................... 10

          3.   Plaintiff's Sixth Cause Of Action For Spoliation Of Evidence Fails
               To State A Legally Sufficient Claim Under California Law .................... 11

          4.   Plaintiff's Seventh Cause Of Action For Prima Facie Tort Is Non-
               Existent Under California Law ............................................................... 12

          5.   Plaintiff Cannot Prove Causation Of Damages......................................... 12

V.   CONCLUSION................................................................................................... 14

i

**TABLE OF AUTHORITIES**

Page

*Allstate Ins. Co. v. Smith,*
    929 F.2d 447 (9th Cir. 1991)...............................................................................13

*Batzel v. Smith,*
    333 F.3d 1018 (9th Cir. 2003)...............................................................................8

*Briggs v. Eden Council for Hope & Opportunity,*
    19 Cal. 4th 1106 (1999) ......................................................................................10

*Cedars-Sinai Med. Ctr. v. Super. Ct.,*
    18 Cal. 4th 1 (1998) ............................................................................................11

*City of Cotati v. Cashman,*
    29 Cal. 4th 69 (2002) ...........................................................................................7

*Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.,*
    944 F.2d 1525 (9th Cir. 1991)
    *aff'd,* 508 U.S. 49 (1993) ......................................................................................9

*Constantini v. Trans World Airlines,*
    681 F.2d 1199 (9th Cir. 1982)...............................................................................2

*Coprich v. Super. Ct.,*
    80 Cal. App. 4th 1081 (2000) .............................................................................11

*Davis & Cox v. Summa Corp.,*
    751 F.2d 1507 (9th Cir. 1985)...............................................................................2

*Della Penna v. Toyota Motor Sales, U.S.A.,*
    11 Cal. 4th 376 (1995) ........................................................................................12

*Diaz v. Kay-Dix Ranch,*
    9 Cal. App. 3d 588 (1970)...................................................................................12

*Empress LLC v. City & County of S.F.,*
    419 F.3d 1052 (9th Cir. 2005)...............................................................................9

*Equilon Enters. v. Consumer Cause, Inc.,*
    29 Cal. 4th 53 (2002) .......................................................................................6, 9

*Francis v. Dun & Bradstreet,*
    3 Cal. App. 4th 535 (1992) .................................................................................12

*Freeman v. Lasky, Haas & Cohler,*
    410 F.3d 1180 (9th Cir. 2005).............................................................................10

*Gould v. Maryland Sound Indus., Inc.,*
    31 Cal. App. 4th 1137 (1995) .............................................................................12

*Jarrow Formulas, Inc. v. LaMarche,*
    31 Cal. 4th 728 (2003) ......................................................................................7, 8

ii

**TABLE OF AUTHORITIES**
(continued)

Page

*Knoell v. Petrovich,*
   76 Cal. App. 4th 164 (1999) .................................................................................................... 10

*Kyle v. Carmon,*
   71 Cal. App. 4th 901 (1999) ...................................................................................................... 8

*Lueter v. State of Cal.,*
   94 Cal. App. 4th 1285 (2002) ................................................................................................. 11

*Manistee Town Ctr. v. City of Glendale,*
   227 F.3d 1090 (9th Cir. 2000) ................................................................................................... 9

*Marshak v. Ballesteros,*
   72 Cal. App. 4th 1514 (1999) ................................................................................................. 13

*Moore v. Brewster,*
   96 F.3d 1240 (9th Cir. 1996) ..................................................................................................... 2

*Navarro v. IHOP Props., Inc.,*
   134 Cal. App. 4th 834 (2005) ................................................................................................. 10

*Navellier v. Sletten,*
   29 Cal. 4th 82 (2002) ............................................................................................................ 7, 8

*New.Net, Inc. v. Lavasoft,*
   356 F. Supp. 2d 1090 (C.D. Cal. 2004) ................................................................................. 1, 7

*Pareto v. F.D.I.C.,*
   139 F.3d 696 (9th Cir. 1998) ................................................................................................... 13

*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton, LLP,*
   133 Cal. App. 4th 658 (2005) ................................................................................................... 7

*Premier Med. Mgmt. Sys., Inc. v. California Ins. Guar. Ass'n,*
   136 Cal. App. 4th 464 (2006) ................................................................................................. 10

*Roberts v. Los Angeles County Bar Assn.,*
   105 Cal. App. 4th 604 (2003) ................................................................................................... 6

*Rogers v. Home Shopping Network, Inc.,*
   57 F. Supp. 2d 973 (C.D. Cal. 1999) ................................................................................... 6, 13

*Rubin v. Green,*
   4 Cal. 4th 1187 (1993) ............................................................................................................ 10

*Shekhter v. Fin. Indem. Co.,*
   89 Cal. App. 4th 141 (2001) ..................................................................................................... 6

*Shropshire v. Fred Rappoport Co.,*
   294 F. Supp. 2d 1085 (N.D. Cal. 2003) ................................................................................... 7

**TABLE OF AUTHORITIES**
(continued)

Page

*Sosa v. DIRECTV, Inc.,*
  437 F.3d 923 (9th Cir. 2006)....................................................................................... 9

*Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.,*
  122 Cal. App. 4th 1049 (2004) ........................................................................... 7, 10

*Theofel v. Farey-Jones,*
  359 F.3d 1066 (9th Cir.)
  *cert. denied,* 543 U.S. 813 (2004) .............................................................................. 9

*Thomas v. Fry's Elecs. Inc.,*
  400 F.3d 1206 (9th Cir. 2005)..................................................................................... 6

*United Mine Workers of America, Dist. 12 v. Illinois State Bar Ass'n,*
  389 U.S. 217 (1967)..................................................................................................... 9

*United States ex rel. Newsham v. Lockheed Missiles & Space Co.,*
  190 F.3d 963 (9th Cir. 1999)....................................................................................... 6

*Varian Med. Sys., Inc. v. Delfino,*
  35 Cal. 4th 180 (2005) ................................................................................................ 8

*White v. Lee,*
  227 F.3d 1214 (9th Cir. 2000)..................................................................................... 9

**STATUTES**

Cal. Civ. Proc. Code § 425.16................................................................................................ 6

Cal. Code Civ. Proc. §§ 1263.310......................................................................................... 2

Cal. Code Civ. Proc. §§ 1263.320......................................................................................... 2

Cal. Civ. Code § 47.................................................................................................................. 10

## I.   INTRODUCTION

Defendants Foley and Lardner, LLP ("Foley"), Gregory V. Moser ("Moser"), and Larry L. Marshall ("Marshall") (collectively "defendants") submit this memorandum of points and authorities in support of their motion to strike the Fourth through Seventh Causes of Action of plaintiff Joan Brown Kearney's ("plaintiff") First Amended Complaint ("FAC"), pursuant to California Code of Civil Procedure section 425.16 (the Strategic Lawsuit Against Public Participation statute, referred to herein as the "anti-SLAPP statute.")

Plaintiff's Fourth through Seventh Causes of action allege claims for fraud, fraud and deceit by suppression of fact, spoliation of evidence and prima facie tort. Plaintiff's First through Third Causes of Action allege claims for violation of the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(C) and 1964(D)), and civil rights statutes (42 U.S.C. § 1983). Plaintiff's federal statutory claims are as legally baseless as her state law claims which are the subject of this anti-SLAPP motion. However, because federal statutory claims are not subject to an anti-SLAPP motion in federal court (*see New.Net, Inc. v. Lavasoft*, 356 F. Supp. 2d 1090, 1099 (C.D. Cal. 2004)), the deficiencies in plaintiff's First through Third Causes of Action are addressed in defendants' separate motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), filed herewith.

## II.   SUMMARY OF ARGUMENT

Defendants are a law firm (Foley) and two individuals (Moser and Marshall) who were Foley partners during the relevant time. Plaintiff is suing defendants solely for their conduct in representing their client, the Ramona Unified School District (the "District"), in an eminent domain action (the "Condemnation Action") which was tried to a jury verdict in the San Diego Superior Court in 2002, was the subject of three separate unsuccessful state appellate proceedings initiated by plaintiff, and which resulted in a final judgment awarding plaintiff $953,000 for her property which the District condemned. Unhappy with the jury verdict, her unsuccessful appeals and the final judgment in the Condemnation Action (and precluded from filing another lawsuit against the District), plaintiff now attempts to gin up liability against defendants in an effort to collaterally attack the sufficiency of her condemnation judgment.

1   Plaintiff's claims are subject to several insurmountable legal defenses which are all

2   designed to bring finality to litigation and avoid successive lawsuits arising out of lawsuits.

3   Indeed, the FAC stands as a paradigm of the meritless lawsuits the California Legislature targeted

4   with the anti-SLAPP statute.  Plaintiff's Fourth through Seventh Causes of Action should be

5   stricken as improper SLAPP claims, and defendants should be awarded their attorney's fees and

6   costs incurred in bringing this motion as the anti-SLAPP statute requires.

7   **III.   SUMMARY OF ALLEGATIONS AND PROCEDURAL BACKGROUND**

8       **A.   The Condemnation Action**

9   Defendants filed the Condemnation Action on behalf of the District on December 27,

10   2000. (*See* Petition for Writ of Error Coram Vobis at 4, attached as Ex. 1 to defendants' Notice

11   of Lodgment ["NOL"].)[1]  The trial of the Condemnation Action commenced in May 2002. (*See*

12   FAC ¶ 28.)[2]

13   The Condemnation Action concerned the fair market value of plaintiff's undeveloped

14   property in Ramona (the "Property").  As a matter of law, plaintiff was entitled to be

15   compensated for the Property at its fair market value, defined as the highest price a willing seller

16   would take and a willing buyer would pay, each with full knowledge of all the uses and purposes

17   for which the property is reasonably adaptable and available.  *See* Cal. Code Civ. Proc. §§

18   1263.310, 1263.320.

19   While the parties disputed the fair market value of the Property, they agreed on the

20   following: (i) fair market value should be based on residential use of the Property; (ii) the value

21   for residential use would depend on how many houses could be built on the Property; (iii) how

22   many houses could be built on the Property would depend on how many septic systems would be

23   permitted on the Property; and (iv) how many septic systems would be permitted on the Property

24   would depend on how well the Property would "percolate" as determined by soil percolation tests

25

---

26   [1] The Court may take judicial notice of the materials lodged with defendants' Notice of Lodgment. *See* defendants' Request for Judicial Notice, filed herewith.

27   [2] Of course, plaintiff is collaterally estopped from re-litigating here any issues of fact or law litigated in the Condemnation Action. *See Moore v. Brewster*, 96 F.3d 1240, 1245 (9th Cir. 1996); *Davis & Cox v. Summa Corp.*, 751 F.2d 1507, 1518 (9th Cir. 1985); *Constantini v. Trans World Airlines*, 681 F.2d 1199, 1201-02 (9th Cir. 1982).

28

1    ("perc tests") on the Property. (*See* FAC ¶ 28.) On or about May 12, 2002, the jury returned a

2    verdict awarding plaintiff $953,000 as the fair market value of the Property. (*Id.* ¶ 31.) On June

3    13, 2002, the trial court entered judgment for plaintiff in that amount. (*See* NOL, Ex. 1 at 4;

4    NOL, Ex. 4.)

5        On June 28, 2002 plaintiff filed a motion for new trial, asserting defendants committed

6    misconduct by falsely arguing to the jury that the District had not performed perc tests on the

7    Property, when in fact it had done so and had not produced the test results in discovery. (*See*

8    NOL, Ex. 1 at 4.) Plaintiff based her new trial motion on a District expense report which, she

9    argued, proved the District had done perc tests. (*Id.*) On August 9, 2002, the trial court denied

10   the new trial motion. (*Id.*) On August 13, 2002, plaintiff filed a notice of appeal of the judgment

11   and the order denying her new trial motion. (*Id* at 5.)

12       On February 7, 2003, while her appeal was pending, plaintiff filed a motion to set aside

13   the judgment, arguing defendants and the District concealed evidence of the District's perc tests

14   and falsely argued to the jury that the District had not performed any perc tests. (*See* NOL, Ex. 1

15   at 5.) Plaintiff based her motion to set aside the judgment on new documents (the perc test

16   results) she obtained through a California Public Records Act ("CPRA") request. (*Id.*)[3] The trial

17   court denied the motion, citing its lack of jurisdiction due to plaintiff's pending appeal of the

18   judgment and the denial of her motion for new trial. (*Id.*) The trial court also denied plaintiff's

19   subsequent motion for reconsideration. (*Id.*) Plaintiff appealed those rulings. (*Id.* at 6.)

20       On July 19, 2003, plaintiff filed a new proceeding -- a petition for writ of error coram

21   vobis filed directly in the appellate court -- challenging the trial court's March 21, 2003 order

22   denying her motion to set aside the judgment.   (*See* NOL, Ex. 1 at 6.)

23       On March 3, 2004, the appellate court decided all three of plaintiff's appellate matters.

24   (*See* NOL, Exs. 1, 2, 3.) The Court of Appeal affirmed the judgment and the denial of plaintiff's

25

26   [3] Defendants understand the allegations of the FAC are deemed true for this motion.  However, defendants
     must note for the record that the perc tests were not provided to the District or to defendants and were not in either of
27   their files.  In further follow up to plaintiff's continuing requests, defendant Marshall tracked down an engineer who
     was no longer with the company that performed the perc tests separate from the litigation, for the first time
28   discovered the existence of the perc tests, and immediately provided them to plaintiff's counsel.

1    new trial motion (*see* FAC ¶ 40), affirmed the denial of plaintiff's motion to set aside the

2    judgment (*see* NOL, Ex. 1 at 6), and denied plaintiff's writ of coram vobis (*see* NOL, Ex. 1). The

3    Court of Appeal subsequently denied plaintiff's petition for a rehearing (*see* FAC ¶¶ 41, 42;

4    NOL, Ex. 5) and the California Supreme Court denied plaintiff's petition for review. (*See* FAC ¶

5    42; NOL, Ex. 8.)

6          **B.**    **The Allegations Of The FAC Demonstrate Plaintiff Is Simply Attempting To**
                     **Relitigate The Condemnation Action Issues Here**

7

8        Plaintiff filed this action on November 14, 2005.  The original complaint asserted claims

9    for violation of Section 1983 of the Civil Rights Act (42 U.S.C. § 1983), Fraud, Spoliation of

10    Evidence, and Prima Facie Tort.  On January 20, 2006, plaintiff filed the FAC, adding two causes

11    of action under the Racketeer Influenced and Corrupt Organizations Act (18 U.S.C. §§ 1962(c)

12    and 1964(d) [hereinafter "RICO"]).

13        Plaintiff's lawsuit is based entirely on defendants' purported misconduct in the

14    Condemnation Action.  Indeed, but for representing the District in the Condemnation Action,

15    defendants have had no dealings whatsoever with plaintiff.  Thus, the allegations of the FAC

16    merely track what transpired in litigating the Condemnation Action and parrot plaintiff's

17    arguments in her three prior unsuccessful appeals in that case.

18        The gravamen of the FAC is that defendants allegedly engaged in discovery misconduct

19    and made material misrepresentations during discovery, trial and appeal of the Condemnation

20    Action.  This alleged misconduct, according to plaintiff, deprived her of the fair market value for

21    the Property.  (*See* FAC ¶¶ 29, 30, 50, 51, 56, 64, 71, 77, 85, 91.)  In particular, plaintiff alleges

22    that defendants denied the existence of and concealed material documents (the perc test results)

23    that, had they been produced during discovery or trial in the Condemnation Action, would have

24    caused the jury to return a more favorable verdict.  (*Id.*)

25        The "crucial" documents allegedly not produced to plaintiff are December 2000, January

26    2001, and February 2001 perc test results on the Property performed for the District by

27    Construction Testing & Engineering, Inc. ("CTE").  (*See* FAC ¶ 25.)  Plaintiff alleges the District

28    did not produce these documents during discovery in the Condemnation Action.  (*Id.*)  The



1   District's (and defendants') purported failure to produce these tests also allegedly violated a

2   December 26, 2000 letter agreement between plaintiff and the District, wherein the District

3   agreed to give plaintiff copies of any perc test results performed. (*See* FAC ¶ 22.) Conspicuously

4   absent from the FAC, however, is any allegation that plaintiff pursued discovery of the perc test

5   results prior to trial in the Condemnation Action.[4]

6          Plaintiff alleges that shortly before the conclusion of the Condemnation Action, she

7   obtained a never produced document suggesting perc testing had in fact been done by the

8   District's engineers. (*See* FAC ¶ 32.) Next, she alleges that on May 21, 2002, after the jury

9   verdict and in reaction to the newly discovered document suggesting undisclosed perc test results,

10  plaintiff submitted a CPRA request to the District that sought all documents relating in any way

11  to perc testing on the Property. (*Id.* ¶ 33.)

12         The parties' counsel exchanged numerous follow-up letters regarding undisclosed perc

13  test results over the next year and a half. (*See* FAC ¶¶ 36, 48.) On November 12, 2002, in

14  response to a second CPRA request, the District gave plaintiff's counsel the December 2000,

15  January 2001, and February 2001 perc test results. (*See* FAC ¶ 36.) Plaintiff presented these

16  documents to the trial court in connection with her unsuccessful motion to set aside the judgment.

17  (*Id.* at 39.) Although plaintiff received the perc test results over three years ago, the FAC does

18  not allege the perc test results establish the Property could support additional septic systems.

19         Thus, plaintiff's entire suit is based on allegations of misconduct in the Condemnation

20  Action.

21

22

23

24         [4] Plaintiff does not allege that her document requests sought perc test results generally, or the December,
    January, and February perc test results specifically. Plaintiff's silence on this score speaks volumes. Indeed, her
25  failure to pursue discovery of the perc test results was expressly noted by the Court of Appeal. In its opinion
    affirming the trial court's denial of plaintiff's motion to set aside the judgment (NOL, Ex. 2), the Court noted that the
26  parties agreed that although plaintiff had evidence the perc tests had been performed, she made no discovery requests
    for those results even though she had ample time to do so before trial. (*See* NOL, Ex. 2 at 21.) The Court remarked
27  that plaintiff's less than diligent discovery efforts understandably led " ... the trial court to conclude that [plaintiff]
    did not want to know the results of any percolation tests on the Property ..."

28

## IV. THE FOURTH THROUGH SEVENTH CAUSES OF ACTION MUST BE STRICKEN UNDER THE ANTI-SLAPP STATUTE

### A. The Anti-SLAPP Statue

The anti-SLAPP statute provides courts the authority to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the . . . Constitution." Cal. Civ. Proc. Code § 425.16(b)(1).[5] The anti-SLAPP statute must be interpreted broadly to effectuate its purpose. *See* Cal. Civ. Proc. Code § 425.16(a); *see also Equilon Enters. v. Consumer Cause, Inc.*, 29 Cal. 4th 53, 59 (2002).

The anti-SLAPP statute requires a two-step analysis:

> [1] First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the [act(s)] of which the plaintiff complains were taken "in furtherance of the defendant's right of petition or free speech . . ."
>
> [2] If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.

*Equilon Enters.*, 29 Cal. 4th at 67. In making these determinations, the trial court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." *Id.* A defendant may target a single cause of action, several causes of action, or an entire complaint with an anti-SLAPP motion. *See Shekhter v. Fin. Indem. Co.*, 89 Cal. App. 4th 141, 150 (2001). And, significantly, the anti-SLAPP statute does not permit amendment of the complaint after the court finds the requisite connection to protected speech. *See Roberts v. Los Angeles County Bar Assn.*, 105 Cal. App. 4th 604, 612 (2003).

---

[5] A defendant may file an anti-SLAPP motion in federal court. *See Thomas v. Fry's Elecs. Inc.*, 400 F.3d 1206, 1206-07 (9th Cir. 2005); *United States ex rel. Newsham v. Lockheed Missiles & Space Co.*, 190 F.3d 963, 972-73 (9th Cir. 1999) (defendants sued in federal courts may bring anti-SLAPP motions to strike state law claims); *New.Net, Inc.*, 356 F. Supp. 2d at 1101 (anti-SLAPP does not conflict with Federal Rules of Civil Procedure). When evaluating an anti-SLAPP motion to strike based on the legal deficiencies of the complaint (like defendants' motion here), federal courts treat the motion like a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Rogers v. Home Shopping Network, Inc.*, 57 F. Supp. 2d 973, 982 (C.D. Cal. 1999).

---

**B.    Step One:  Plaintiff's Fourth Through Seventh Causes Of Action Arise From Defendants' Conduct In Furtherance Of Their Right To Petition**

A defendant is entitled to protection under the anti-SLAPP statute once it is shown that the lawsuit arises from acts in furtherance of the defendant's rights of petition or free speech.  The moving party must make an initial prima facie showing that the claimant's suit arises from an act in furtherance of its rights of petition or free speech.  *See New.Net, Inc.*, 356 F. Supp. 2d at 1098.  The gravamen of the plaintiff's cause of action determines whether the anti-SLAPP statute applies.  *See City of Cotati v. Cashman*, 29 Cal. 4th 69, 78 (2002).  A cause of action arises from free speech or petitioning activity when "the plaintiff's cause of action itself was based on an act in furtherance of the defendant's right of petition or free speech."  *Id.*

There can be no doubt that the allegations against defendants arise from acts in furtherance of their rights of petition or free speech.  All the defendants' alleged wrongful acts were done in connection with the Condemnation Action.  The California Supreme Court has expressly recognized that the constitutional right to petition applies to filing litigation and to conduct in furtherance of the litigation.  *See Navellier v. Sletten*, 29 Cal. 4th 82 (2002).  Indeed, in *Navellier*, the California Supreme Court noted:

> [B]ut for the [lawsuit] and [defendants'] alleged actions taken in connection with that litigation, plaintiffs' present claims would have no basis.  This action therefore falls squarely within the ambit of the anti-SLAPP statute's "arising from" prong.

*Navellier*, 29 Cal. 4th at 90; *see also Jarrow Formulas, Inc. v. LaMarche*, 31 Cal. 4th 728, 734 (2003) (defendant sued for filing underlying action, and for oral and written statements made during that litigation, satisfied threshold requirement that litigation stemmed from protected conduct); *Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton, LLP*, 133 Cal. App. 4th 658, 675 (2005) (attorney defendants' litigation conduct in underlying SEC lawsuit, alleged to constitute a breach of fiduciary duty and result in financial harm to investors, arose from petitioning activity); *Sylmar Air Conditioning v. Pueblo Contracting Services, Inc.*, 122 Cal. App. 4th 1049, 1059 (2004) (alleged fraudulent statements in connection with litigation met SLAPP threshold of petitioning conduct); *Shropshire v. Fred Rappoport Co.*, 294 F. Supp. 2d 1085, 1099

1   (N.D. Cal. 2003) ("[C]alifornia courts have held that 'the constitutional right to petition' includes

2   the basic act of filing litigation or otherwise seeking administrative action'"). (Citation omitted.).

3          The FAC is based entirely on allegations that defendants engaged in wrongful conduct or

4   communications in or in furtherance of the Condemnation Action.  For example, plaintiff alleges:

5   (i) defendants concealed relevant documents <u>during pretrial, trial and appeal of the Condemnation</u>

6   <u>Action</u> (*see* FAC ¶¶ 24-26, 32, 33, 36, 37, and 48); (ii) defendants engaged in purportedly evasive

7   communications regarding relevant documents <u>during trial and appeal of the Condemnation</u>

8   <u>Action</u> (*see* FAC ¶¶ 33, 36, 48); and (iii) defendants engaged in misrepresentations <u>to the trial</u>

9   <u>court and the jury</u> (*See* FAC ¶¶ 29, 30, 48.).  As in *Navellier*, but for the Condemnation Action

10  and defendants' alleged actions taken in connection with that litigation, plaintiff's FAC claims

11  would have no basis whatsoever.  This action therefore falls squarely within the ambit of the anti-

12  SLAPP statute's "in furtherance of defendant's right of petition" prong.  Accordingly, defendants

13  have carried their moving burden under the statute.

14  **C.    Step Two:  As A Matter Of Law, Plaintiff Has No Chance Of Prevailing On**
        **The Fourth Through Seventh Causes Of Action**

15

16          Once a defendant demonstrates a claim arises from protected conduct, the burden shifts to

17  the plaintiff to prove that the complaint is legally sufficient and supported by a prima facie

18  showing of facts sufficient to sustain a favorable judgment.  *See Batzel v. Smith*, 333 F.3d 1018,

19  1024 (9th Cir. 2003) (citations omitted).  To meet this burden:

20              [T]he plaintiff must "state[] and substantiate[] a legally sufficient
                claim."  "Put another way, the plaintiff 'must demonstrate that the
21              complaint is both legally sufficient and supported by a sufficient
                prima facie showing of facts to sustain a favorable judgment if the
22              evidence submitted by the plaintiff is credited.'"

23  *Jarrow Formulas, Inc.*, 31 Cal. 4th at 741 (citations omitted).  Moreover, the evidence submitted

24  in opposition to an anti-SLAPP motion must be admissible evidence.  *See Kyle v. Carmon*, 71

25  Cal. App. 4th 901, 907 (1999).  If this burden is not met, the claim or lawsuit must be dismissed,

26  with fees and costs awarded to the defendant.  *See Varian Med. Sys., Inc. v. Delfino*, 35 Cal. 4th

27  180, 192 (2005).

28



1    Plaintiff cannot meet her burden of establishing a probability of prevailing on her state

2    law claims (*see Equilon Enters.*, 29 Cal. 4th at 67) because those claims are precluded by several

3    insurmountable legal defenses.

4              **1.** ·   **The *Noerr-Pennington* Doctrine Immunizes Defendants From Any**
                  **Liability On Plaintiff's Fourth Through Seventh Causes of Action**

5

6    Under the *Noerr-Pennington* doctrine, those who petition any department of the

7    government are immune from liability for their petitioning conduct. *See Empress LLC v. City &*

8    *County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005); *Manistee Town Ctr. v. City of Glendale*, 227

9    F.3d 1090, 1092 (9th Cir. 2000).

10    The right to petition the government is " … among the most precious of the liberties

11    safeguarded by the Bill of Rights . . . [and] intimately connected, both in origin and in purpose,

12    with other First Amendment rights of free speech and free press." *United Mine Workers of*

13    *America, Dist. 12 v. Illinois State Bar Ass'n*, 389 U.S. 217, 222 (1967). The *Noerr-Pennington*

14    doctrine is a principle of Constitutional immunity established by the Supreme Court to protect the

15    First Amendment's guarantee of "the right of the people . . . to petition the Government for a

16    redress of grievances." *Sosa v. DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).

17    Although the *Noerr-Pennington* doctrine developed in antitrust cases, because it " … is

18    based on and implements the First Amendment right to petition", the doctrine is not limited to the

19    antitrust context, but applies equally in all contexts. *White v. Lee*, 227 F.3d 1214, 1231 (9th Cir.

20    2000). Thus, with very limited exception not applicable here, conduct that implicates the

21    protections afforded by the Petition Clause may not be burdened. *See Sosa*, 437 F.3d at 931-32.

22    When determining whether burdened conduct falls under the protection of the Petition Clause,

23    courts must give adequate "breathing space" to the right of petition. *Id.*

24    Courts expressly recognize that litigation conduct is protected by the *Noerr-Pennington*

25    doctrine because it is part of petitioning the government for redress of grievances. *See Theofel v.*

26    *Farey-Jones*, 359 F.3d 1066, 1078 (9th Cir.), *cert. denied*, 543 U.S. 813 (2004). Likewise,

27    "conduct incidental to the prosecution of the suit" is cloaked with *Noerr-Pennington* immunity.

28    *See Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29



1   (9th Cir. 1991), *aff'd*, 508 U.S. 49 (1993); *Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180,

2   1185 (9th Cir. 2005) ("[D]iscovery, like settlement talks, is 'conduct incidental to' a petition").

3   Accordingly, it is well settled in the Ninth Circuit that communications between private parties

4   related to litigation between them is sufficiently within the protection of the Petition Clause to

5   trigger *Noerr-Pennington* immunity.  *See Sosa*, 437 F.3d at 935;  *see also Freeman*, 410 F.3d at

6   1185 (holding that *Noerr-Pennington* doctrine barred plaintiff's claims against law firms and

7   attorneys predicated on alleged discovery misconduct, subornation of perjury and witness

8   intimidation in prior action).  Even claims narrowly focused on a defendant's alleged discovery

9   misconduct (and leaving aside the defendant's alleged misrepresentations to the trial court or

10  jury) are barred by the *Noerr-Pennington* doctrine.  *See Freeman*, 410 F.3d at 1185

11  ("[D]iscovery, like settlement talks, is 'conduct incidental to' a petition.").

12          Plaintiff sued defendants exclusively because of allegedly unlawful or improper actions

13  and/or communications engaged in while prosecuting the Condemnation Action.  (*See e.g.*, FAC

14  ¶¶ 24-26, 29, 30, 32, 33, 36, 37, and 48.)  As a matter of law, *Noerr-Pennington* immunity applies

15  to plaintiff's allegations and mandates dismissal of her Fourth through Seventh Causes of Action.

16  *See Premier Med. Mgmt. Sys., Inc. v. California Ins. Guar. Ass'n*, 136 Cal. App. 4th 464, 479

17  (2006) (granting anti-SLAPP motion where *Noerr-Pennington* doctrine applied to claims).

18                  **2.      The Litigation Privilege Bars Plaintiff's Fraud Claims**

19          Communications in connection with matters related to a lawsuit are also privileged under

20  California Civil Code section 47(b).  *See Rubin v. Green*, 4 Cal. 4th 1187, 1192 (1993); *Knoell v.*

21  *Petrovich*, 76 Cal. App. 4th 164, 167 (1999).  Communications subject to the "litigation

22  privilege" of section 47(b) are subject to dismissal under the anti-SLAPP statute.  *See Briggs v.*

23  *Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999); *Navarro v. IHOP Props.,*

24  *Inc.*, 134 Cal. App. 4th 834, 843-44 (2005) (affirming anti-SLAPP motion on grounds that

25  litigation privilege barred plaintiff's fraud claims); *Sylmar Air Conditioning*, 122 Cal. App. 4th at

26  1059 (affirming anti-SLAPP motion and finding litigation privilege barred plaintiff's action for

27  fraud based on alleged misrepresentations by defendant's attorney during litigation).

28

---

sd-304637                                10                        Case No. 05 CV 2112 L (LSP)
                                                                  DEFENDANTS' MPA ISO MOTION TO STRIKE

1    Plaintiff's fraud claims are exclusively based on: (i) defendants' alleged concealment of

2  relevant documents during the trial and appellate proceedings in the Condemnation Action (*see*

3  FAC ¶¶ 24-26, 32, 33, 36, 37, and 48); and (ii) purported misrepresentations, to the jury and

4  plaintiff's counsel, during the trial and appellate proceedings in the Condemnation Action. (*See*

5  FAC ¶¶ 29, 30, 33, 36, and 48.)  Civil Code section 47(b) applies and precludes plaintiff from

6  establishing the legal sufficiency of her fraud claims.

7    **3.    Plaintiff's Sixth Cause Of Action For Spoliation Of Evidence Fails To State A Legally Sufficient Claim Under California Law**

8

9    Plaintiff's Sixth Cause of Action is for "spoliation of evidence."  Of course, defendants

10  did not alter, destroy or otherwise "spoliate" any evidence.  To the contrary, the FAC admits

11  defendants provided plaintiff with the perc test results.  (*See* FAC ¶¶ 36, 38, 48.)  Plaintiff merely

12  complains that the perc test results were not provided when they should have been.  Thus,

13  plaintiff simply does not allege defendants "spoliated" anything.  While plaintiff alleges

14  defendants "spoliated" evidence by "instructing CTE not to draft the narrative analysis that was

15  supposed to accompany the test results," (*see* FAC ¶ 84), this is nonsense.  Defendants had no

16  duty to create a narrative analysis or any other evidence for plaintiff.

17    Regardless, plaintiff's spoliation claim is baseless.  California appellate courts have held

18  there is no cause of action for negligent spoliation of evidence (*see Lueter v. State of Cal.*, 94 Cal.

19  App. 4th 1285, 1301 (2002); *Coprich v. Super. Ct.*, 80 Cal. App. 4th 1081, 1090 (2000)), and

20  California law does not recognize a tort cause of action for intentional spoliation of evidence

21  when the spoliation was or should have been discovered before the conclusion of the litigation.

22  *See Cedars-Sinai Med. Ctr. v. Super. Ct.*, 18 Cal. 4th 1, 16-17 (1998) (noting that recognition of

23  spoliation tort would encourage endless cycles of litigation and " … would require a 'retrial

24  within a trial,' for all of the evidence in the underlying action …")  Plaintiff admits the perc test

25  results were or should have been discovered before the conclusion of the Condemnation Action

26  (*see* FAC ¶ 32), and the Court of Appeal said as much as well.  (*See* NOL, Ex. 2 at 21 ("Kearney

27  made no discovery requests for the results of those tests, even though there was ample time

28



1   ...[which] undoubtedly influenced the trial court to conclude that Kearney did not want to know

2   the results of any percolation tests on the Property arranged by [the] District.").)

3        Thus, plaintiff cannot meet her burden of proving a factually or legally sufficient basis for

4   her cause of action for spoliation of evidence. Therefore, it should be stricken under the anti-

5   SLAPP statute. Indeed, allowing plaintiff to proceed with her spoliation claim would sanction the

6   kind of "derivative" litigation the *Cedars-Sinai* court sought to avoid.

7           **4.   Plaintiff's Seventh Cause Of Action For Prima Facie Tort Is Non-Existent Under California Law**

8

9        California courts have also refused to recognize a cause of action for "prima facie tort."

10   In *Della Penna v. Toyota Motor Sales, U.S.A.*, 11 Cal. 4th 376, 386-93 (1995), the California

11   Supreme Court stated: " [T]he problem with the prima facie tort approach is that basing liability

12   on a mere showing that defendant intentionally interfered with plaintiff's prospective economic

13   relations makes actionable all sorts of contemporary examples of otherwise legitimate

14   persuasion." *See also Francis v. Dun & Bradstreet*, 3 Cal. App. 4th 535, 541 (1992) (re-labeling

15   defamation claim as "prima facie tort" does not save claim -- "We cannot believe [a] defense can

16   be abrogated merely because an artful pleader chooses to label the cause of action "prima facie

17   tort" rather than defamation"); *Gould v. Maryland Sound Indus., Inc.*, 31 Cal. App. 4th 1137

18   (1995) (rejecting plaintiff's attempt to incorporate claims for breach of implied covenant into an

19   overall "prima facie tort"); *Diaz v. Kay-Dix Ranch*, 9 Cal. App. 3d 588, 592 (1970) ("California

20   decisions have never utilized the terminology of that doctrine [prima facie tort]").

21        Plaintiff cannot prevail on her Seventh Cause of Action because California simply does

22   not recognize a claim for "prima facie tort." Therefore, this claim should be stricken under the

23   anti-SLAPP statute.

24           **5.   Plaintiff Cannot Prove Causation Of Damages**

25        In order to prevail, plaintiff must prove causation of damages. In the Fourth through

26   Seventh Causes of Action, plaintiff alleges that as a result of the defendants' alleged wrongful

27   conduct (i.e., not producing the perc tests), she did not receive fair value for her Property and

28

---



1   suffered damages measured by the difference between what the jury awarded and the fair market

2   value. (See FAC ¶¶ 64, 71, 77, 85.)

3       Where the facts are undisputed, causation is a question of law. *See Allstate Ins. Co. v.*

4   *Smith*, 929 F.2d 447, 451 (9th Cir. 1991); *see also Marshak v. Ballesteros*, 72 Cal. App. 4th 1514

5   (1999). For purposes of an anti-SLAPP motion, as with a motion to dismiss, the facts alleged are

6   deemed admitted --i.e., not in dispute. *See Rogers*, 57 F. Supp. 2d at 982; *Pareto v. F.D.I.C.,* 139

7   F.3d 696, 699 (9th Cir. 1998).

8       The appellate opinion in *Ramona Unified School Dist. v. Kearney* sets out plaintiff's

9   burden of proof and conclusively established that she did not meet that burden. (*See* NOL, Ex. 2)

10  The court expressly noted that plaintiff did not establish that she probably would have received a

11  more favorable verdict had the claimed misconduct not occurred. (*See* NOL, Ex. 2 at 19.) To the

12  contrary, plaintiff herself introduced into evidence the results of 1996 septic percolation tests that

13  showed satisfactory percolation for a subdivision of just <u>six</u> residential lots. (*Id.*) However, the

14  court recognized that to support her contention that the Property's fair market value was

15  $1,400,000, plaintiff had to establish the likelihood that she would be permitted by the County to

16  file a <u>16</u> lot subdivision map. (*Id.*) To do so she would have to provide proof by percolation tests

17  that <u>each of the 16 lots</u> was suitable for a residential septic tank and leach field. (*Id.* at 19-20.)

18  Thus, the court recognized that in order for plaintiff to meet her burden of proof, "[T]he

19  concealed tests allegedly conducted by [District] would have to show satisfactory percolation of

20  each of the 16 lots to support [plaintiff's] argument that but for misrepresentation of those tests by

21  District, it was likely she would have received a more favorable verdict." (*Id.* at 20.)

22      The appellate court then noted that plaintiff presented <u>no evidence</u> in support of her

23  motion for new trial that more than <u>six</u> lots were satisfactory for a residential septic system, as

24  shown by the non-disclosed tests. (*See* NOL, Ex. 2 at 20.) Therefore, she did not establish that if

25  those tests had been disclosed, it was likely the verdict would have been more favorable to her.

26  (*Id.*) She simply had not shown prejudice resulting from the alleged misrepresentation of the

27  District and its counsel concerning percolation on the Property. (*Id.*) In conclusion, the court

28  stated:

---

sd-304637                              13                   Case No. 05 CV 2112 L (LSP)
                                                     DEFENDANTS' MPA ISO MOTION TO STRIKE



> Without discussing each specific representation or argument, our review of the record supports a reasonable inference that the statements of District's counsel were to the effect that District had not conducted percolation tests for all 12 or 16 lots in [plaintiff's] proposed subdivision or that showed satisfactory percolation for more lots than [plaintiff's] percolation tests.

(*See* NOL, Ex. 2 at 22.)

In short, plaintiff had her opportunity to meet her burden of proving that she failed to obtain a more favorable result in the Condemnation Action because defendants did not produce the perc test results, and she failed to meet that burden. Here, she has not even alleged that the perc test results -- which she has now had for over three years -- in fact prove that the Property would support more than the six septic systems the Property could support as revealed by her own evidence. Thus, the FAC does not even allege facts sufficient to prove causation.

Finally, it must be noted that plaintiff simply cannot meet her burden of proving causation of damages because the alleged wrongdoing did not prevent her from proving the percolation qualities of the Property would support additional homes. Plaintiff does not and cannot truthfully allege that she was ever denied the opportunity to do any percolation testing on the Property herself. Indeed, plaintiff could have done as much percolation testing as she and her lawyers desired, and thus could have developed her own evidence that the Property would support more than six homes. Instead she simply offered her own perc test results showing the Property would only support six homes, and she was compensated consistent with her own proof. Nothing defendants allegedly did or did not do prevented plaintiff or her lawyers from developing percolation test results to prove the Property would support more homes and had a greater fair market value in the Condemnation Action. Therefore, plaintiff cannot meet her burden of proving causation of damages on any of her claims.

## V.   CONCLUSION

For the reasons set forth herein, defendants respectfully request this Court strike plaintiff's Fourth, Fifth, Sixth and Seventh Causes of Action pursuant to California Code of Civil Procedure section 425.16. Defendants easily meet the first prong of the anti-SLAPP statute, as the FAC is entirely based on defendants' protected conduct in connection with litigation. Plaintiff cannot

1   meet her burden under the second prong of the anti-SLAPP statute -- proving her claims are

2   factually and legally sufficient -- because: (i) defendants' alleged conduct is immune from

3   liability under the *Noerr-Pennington* doctrine and the litigation privilege of California Civil Code

4   section 47(b); (ii) plaintiff's spoliation and "prima facie tort" claims do not exist under California

5   law;  and (iii) defendants did not and could not have caused plaintiff any damages of the sort she

6   alleges.  Defendants must also be awarded their attorney's fees and costs incurred in bringing this

7   motion.

8   Dated: April 4, 2006                              MORRISON & FOERSTER LLP

9

10                                                    By: _____

11                                                         Mark. C. Zebrowski
                                                           Greg A. Klawitter
12                                                         Attorneys for Defendants
                                                           FOLEY AND LARDNER, GREGORY
13                                                         M. MOSER, AND LARRY L.
                                                           MARSHALL

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28