UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN BROWN KEARNEY,<br><br>   Plaintiff,<br><br>v.<br><br>FOLEY AND LARDNER, *et al.*,<br><br>   Defendants. | Civil No. 05-CV-2112-L(LSP)<br><br>**ORDER GRANTING MOTION TO DISMISS THE FIRST, SECOND AND THIRD CAUSES OF ACTION [doc. #16] and GRANTING MOTION TO STRIKE FOURTH, FIFTH, SIXTH AND SEVENTH CAUSES OF ACTION [doc. #18]** |

  Defendants Foley & Lardner, Gregory V. Moser, and Larry L. Marshall (collectively "Foley" or "defendants") move to dismiss plaintiff's first, second and third causes of action [doc. #16], and to strike plaintiff's fourth, fifth, sixth and seventh causes of action [doc. #18]. The motions have been fully briefed. For the reasons set forth below, the Court enters the following decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

  Plaintiff is the former owner of a 52.06 acre parcel of land in Ramona, California. The Ramona Unified School District ("District" or "RUSD") board adopted a resolution declaring it necessary to acquire plaintiff's property through eminent domain proceedings for construction of a new school. Defendants include the law firm of Foley and Lardner, LLC, and two individuals, Moser and Marshall, who were Foley partners during the relevant time and who represented the

District in the eminent domain action. Defendant Michael T. McCarthy[1] was an assistant superintendent of the RUSD. The District was granted an order authorizing it to take possession of the property on December 29, 2000.

The condemnation trial began on April 29, 2002, and ended on May 9, 2002. At issue in the trial was the fair market value of the property, which is defined as the highest price on the date of valuation that would be agreed to by the seller. (CAL. CODE CIV. P. § 1263.320). The fair market value was determined by residential use of the property and how many buildings could be built on the property. The number of buildings supportable on the property was dependent upon the number of septic systems permitted which was dependent upon how well the soil would percolate. (FAC ¶ 28). After the presentation of witnesses and evidence, the jury awarded plaintiff $953,000.00 as the fair market value of her property.

Soon thereafter, plaintiff filed a motion for new trial contending that the District's counsel had wrongfully argued that the District had not performed percolation ("perc") tests on her property even though the District had expended money to conduct such a test. Plaintiff's motion was denied with the trial court noting there was no evidence that the District withheld any information from plaintiff. Plaintiff appealed the decision denying her motion for a new trial. On March 3, 2004, the California Court of Appeal, Fourth Appellate District, affirmed the judgment of the Superior Court.

During the time plaintiff's appeal was pending, she filed a motion to set aside the judgment and to grant her a new trial on the ground that the District and its counsel had concealed evidence of the perc tests. The trial court denied plaintiff's motion finding it had no jurisdiction because of plaintiff's then-pending appeal.

Plaintiff filed another motion for reconsideration of the trial court's order denying its motion to set aside the judgment. Again the court denied the motion for lack of jurisdiction.

Plaintiff filed a notice of appeal challenging the motion to set aside the judgment and the motion for reconsideration. The appeal was styled as a petition for writ of *error coram vobis*.

---

[1] Defendant McCarthy has filed motions to dismiss and to strike [doc. #8, 13, 15] that are considered in a separate Order.

1  The court of appeals took up all the appellate matters and affirmed the judgment denying
2  plaintiff's motion for a new trial; affirmed the denial of the motion to set aside the judgment; and
3  denied the appeal for *writ of coram vobis*. The court of appeals denied a petition for rehearing.
4  Plaintiff then petitioned the California Supreme Court for review. On May 19, 2004, the
5  Supreme Court denied review.
6  　　　On January 20, 2006, plaintiff filed a First Amended Complaint in this Court alleging
7  causes of action for Racketeer Influenced and Corrupt Organizations Act ("RICO"); conspiracy
8  to violate RICO under section 1962(c); 42 U.S.C. § 1983; false promise; fraud and deceit;
9  spoliation of evidence; and *prima facie* tort against defendants.

## DISCUSSION

**A.   MOTION TO DISMISS PLAINTIFF'S FIRST, SECOND AND THIRD CAUSES OF ACTION**

### 1.   *Noerr-Pennington* Doctrine

Defendants contend plaintiff's first, second and third causes of action must be dismissed under the *Noerr-Pennington* doctrine. As noted above, the first three causes of action allege violations of RICO, conspiracy to violate RICO, and violation of constitutional rights under 42 U.S.C. § 1983.

The *Noerr-Pennington* doctrine derives from the First Amendment's guarantee of "the right of the people . . . to petition the Government for a redress of grievances." U.S. Const. amend. I. Under the *Noerr-Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct. *Empress LLC v. City & County of S.F.*, 419 F.3d 1052, 1056 (9th Cir. 2005) (citing *Manistee Town Ctr. v. City of Glendale*, 227 F.3d 1090, 1092 (9th Cir. 2000)).

In the litigation context, petitions sent directly to the court in the course of litigation, and also "conduct incidental to the prosecution of the suit" are protected by the *Noerr-Pennington* doctrine. *Columbia Pictures Indus., Inc. v. Prof'l Real Estate Investors, Inc.*, 944 F.2d 1525, 1528-29 (9th Cir. 1991) (" *PRE I* "), aff'd, 508 U.S. 49, 113 S. Ct. 1920 (1993); *see also Freeman v. Lasky, Haas & Cohler*, 410 F.3d 1180, 1184 (9th Cir. 2005).

In *Freeman*, the plaintiff brought suit alleging that discovery misconduct in related litigation constituted a violation of the antitrust laws. *Id.* at 1183. The Ninth Circuit held that discovery communications, while not themselves petitions, constitute "conduct incidental to a petition." *Id.* at 1184 (internal quotation marks omitted). Thus, the court of appeals concluded that "unless the underlying petition itself fell outside the protection of the right of petition, these communications come within the *Noerr-Pennington* doctrine." *Id.*

The Ninth Circuit also has concluded that "the *Noerr-Pennington* doctrine stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause." *Sosa v. DirecTV, Inc.*, 437 F.3d 923, 937 (9th Cir. 2006)(*Noerr-Pennington* immunity extends to actions seeking to impose RICO liability); *see also White v. Lee*, 227 F.3d 1214, 1231 (9th Cir. 2000) (holding that because it "is based on and implements the First Amendment right to petition," the *Noerr-Pennington* doctrine is not limited to the antitrust context, but "applies equally in all contexts"). "Under the *Noerr-Pennington* rule of statutory construction, we must construe federal statutes so as to avoid burdening conduct that implicates the protections afforded by the Petition Clause unless the statute clearly provides otherwise." *Sosa*, 437 F.3d at 937. Moreover, "the law of this circuit establishes that communications between private parties are sufficiently within the protection of the Petition Clause to trigger the *Noerr-Pennington* doctrine, so long as they are sufficiently related to petitioning activity." *Id.*

Plaintiff contends that the *Noerr-Pennington* doctrine should not be applied in this circumstance because the conduct does not qualify as conduct in furtherance of their right to petition. Plaintiff further contends that even if her claims fall within the *Noerr-Pennington* doctrine in these circumstances, the "sham litigation" exception to the doctrine is applicable here.

As alleged in her FAC, plaintiff's three federal statutory claims against defendants are based exclusively on actions and communications defendants allegedly engaged in during the course of the eminent domain process and while prosecuting the condemnation action which resulted in her not receiving fair market value for her property in the condemnation action.

Plaintiff specifically alleges that defendants: made a fraudulent promise prior to the eminent domain proceedings; suppressed material facts during the condemnation action; and proffered misrepresentations during trial.

Plaintiff contends that the fraudulent promise was made prior to the eminent domain process and thus falls outside the *Noerr-Pennington* doctrine. Plaintiff asserts that the defendants failed to honor a letter agreement executed two weeks prior to the commencement of the condemnation action. In the letter agreement, plaintiff agreed to allow defendants' client, the District, access to her property to conduct perc tests related to the eminent domain proceedings and defendants agreed to disclose test results to plaintiff. (FAC, ¶¶ 67, 74). Even reading plaintiff's claim broadly, the alleged fraudulent promise was made within the context of the eminent domain proceeding. Thus, on the face of the FAC, plaintiff's contentions of federal statutory wrongdoing on the part of defendants are part of petitioning the government for redress or are incidental to the prosecution of a legal action, namely, the eminent domain proceedings that resulted in an action to determine the fair market value of plaintiff's property. Accordingly, Construing plaintiff's allegations in her favor, her RICO, conspiracy to commit RICO violations and 42 U.S.C. § 1983 claims fall within the *Noerr-Pennington* doctrine. Thus, plaintiff must rely on the "sham litigation" exception to the doctrine to overcome defendants' motion to dismiss.

The Ninth Circuit noted in the context of an antitrust case, that this circuit recognizes three categories of behavior that can amount to a sham and, therefore, fall outside the protection of the *Noerr-Pennington* doctrine. *Kottle v. Northwest Kidney Ctrs.*, 146 F.3d 1056 (9th Cir. 1998). Here, plaintiff relies on the third category: "if the alleged [federal statutory violations] behavior consists of making intentional misrepresentations to the court, litigation can be deemed a sham if "a party's knowing fraud upon, or its intentional misrepresentations to, the court deprive the litigation of its legitimacy." *Liberty Lake Inv., Inc. v. Magnuson*, 12 F.3d 155, 158 (9th Cir. 1993); *Clipper Exxpress v. Rocky Mountain Motor Tariff Bureau, Inc.*, 690 F.2d 1240, 1260 (9th Cir. 1982). The Supreme Court has held that "sham litigation must constitute the pursuit of claims so baseless that no reasonable litigant could realistically expect to secure

favorable relief." *Professional Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 62 (1993).

Plaintiff's FAC falls far short of adequately alleging this variant of the sham exception. Here, plaintiff bases her complaint around the alleged failure of defendants to provide her with perc tests. But as the trial court noted, plaintiff was on notice of possible perc tests conducted by the RUSD during the time for discovery, prior to the condemnation trial. Plaintiff supported her motion for new trial with a District budget document for the new school dated November 29, 2001, that was provided to plaintiff during discovery, which suggested that the District paid $16,676.69 to an engineering firm for "Septic System testing & Layout" for the subject property. As the trial court discussed, plaintiff could have secured further information about the District's expenditure and possible perc tests but:

> [Kearney] did not want to have a bunch of [percolation] information here. [Kearney] wanted enough [percolation] information to appropriately suggest to the jury that the entire property would have perked . . . but I must tell you, [Kearney's counsel], . . . that I am terribly disappointed to see a motion alleging misconduct and intentional suppression of evidence on the part of opposing counsel . . . I find no evidence before me that there was any withholding of information on the part of [the District] in this case. I find that there is . . . nothing in the record to indicate misconduct on the part of [District's counsel].

(Defendants' Exh. 2 at 5, Decision of the Court of Appeal, Fourth Appellate District filed March 3, 2004)

In upholding the trial court's denial of plaintiff's motion for new trial, the court of appeals agreed that the suggested evidence of misconduct on the part of defendants was available to plaintiff prior to the condemnation proceeding but plaintiff failed to pursue the information.

> Furthermore, Kearney as not shown that she was prevented from having a fair trial based on the assertions of the District that there were no percolation tests on the Property other than those conducted on behalf of Kearney. Kearney obtained during pretrial discovery evidence that District had paid approximately $4,000 for percolation tests of the Property, minutes of District's board stating percolation tests on the Property had been completed, and deposition testimony from District's employee McCarty that percolation tests of the Property had been completed. However, the parties agree that with this pretrial information Kearney made no discovery requests for the results of those tests, even though there was ample time before trial to pursue additional discovery.

1 *Id.* at 12.

2 Having reviewed the record, including the trial and appellate courts' decisions of no misconduct on the part of defendants, plaintiff has not supported her position that defendants made intentional misrepresentations to the court thereby depriving the condemnation proceeding of its legitimacy. Accordingly, plaintiff has not provided a factual or legal basis for the Court to find that the sham litigation exception to the *Noerr-Pennington* doctrine is applicable.[2] Based on the foregoing, the Court will grant defendants' motion to dismiss plaintiff's first, second and third causes of action.

**B. MOTION TO STRIKE FOURTH, FIFTH, SIXTH AND SEVENTH CAUSES OF ACTION**

Plaintiff's fourth through seventh causes of action allege state law claims for fraud, fraud and deceit by suppression of fact, spoliation of evidence, and *prima facie* tort. Defendants contend these causes of action must be stricken because they are based on conduct in furtherance of the eminent domain proceeding and therefore, are subject to California Civil Procedure Code section 425.16, known as the anti-SLAPP statute.[3] In relevant part, this statute provides:

> A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim.

CAL. CODE CIV. PROC., § 425.16(b)(1).

An "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" includes:

> (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing

---

[2] Because the Court finds that the *Noerr-Pennington* doctrine is applicable, the Court will not address the legal sufficiency of plaintiff's allegation with respect to her federal statutory claims under Federal Rule of Civil Procedure 12(b)(6).

[3] SLAPP stands for "strategic lawsuit against public participation." *Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1109 n.1 (1999).

made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.

CAL. CIV. PROC. CODE, § 425.16(e).

Analysis of an anti-SLAPP motion involves a two-step process. First, the defendant must show that the lawsuit challenges First Amendment speech protected by California Code of Civil Procedure section 425.16. CAL. CIV. PROC. CODE § 425.16(b)(1); *Braun v. Chronicle Pub. Co.*, 52 Cal. App. 4th 1036, 1043 (1997). "A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in subdivision (e)." *Braun*, 52 Cal. App. 4th at 1043. If the court finds the defendant has met this requirement, it must then determine whether the plaintiff has demonstrated a probability of prevailing on the merits. *DuPont Merck Pharm. Co. v. Superior Court*, 78 Cal. App. 4th 562, 567 (2000). To establish a probability of prevailing, the plaintiff must show that "the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Navellier v. Sletten*, 29 Cal. 4th 82, 88-89 (2002)(citing *Wilson v. Parker, Covert & Chidester*, 28 Cal. 4th 811, 821, (2002) (quoting *Matson v. Dvorak,* 40 Cal. App. 4th 539, 548, 46 Cal. Rptr. 2d 880 (1995)).

### a. Protected Speech

Defendants contend that their alleged wrongful activities were in furtherance of the eminent domain proceeding, including the condemnation trial, and accordingly their activities are covered by the First Amendment right to petition the government. Although conceding that acts based in furtherance of litigation may be subject to dismissal under the anti-SLAPP statute, plaintiff argues that the anti-SLAPP statute is not applicable to her state law claims because the claims are based on actions that the defendants took that were "separate and apart from the condemnation action and on actions that cannot possibly be characterized as in furtherance of Defendants' free speech or petition rights." (Opp. at 5).

Plaintiff states that her fraud claims are based on a promise and suppression of fact that defendants made to and hid from plaintiff prior to RUSD's initiation of the condemnation action.

*Id.* Plaintiff also asserts that her spoliation and *prima facie* tort claims are not based on actions in furtherance of defendants' right to petition. Instead, according to plaintiff, defendants suppressed the District's percolation tests and instructed the District's engineering firm not to prepare a narrative analysis of the tests for the purpose of supporting a lower fair market value for plaintiff's property during the condemnation proceeding. Further, plaintiff states that her "*prima facie* tort claim is based on the multitude of acts that Defendants took, both within and outside of the litigation, in breach of their duties as government officials and lawyers in an eminent domain action . . . ." *Id.* at 6. Thus, as plaintiff acknowledges, although the claims of spoliation and *prima facie* tort "are based on actions *taken during a litigation proceeding*, the conduct underlying those claims simply does 'not consist of any act in furtherance of anyone's right of petition or free speech.'" *Id.* (emphasis added)(citing *Jesperson v. Zubiate-Beauchamp*, 114 Cal. App. 4th 624, 631 (2003).

Having reviewed the FAC, all of plaintiff's contentions about defendants' actions fall within the scope of petitioning conduct subject to anti-SLAPP protection. "[I]t is the principal thrust or gravamen of the plaintiff's cause of action that determines whether the anti-SLAPP statute applies . . . ." *Martinez v. Metabolife Internat. Inc.*, 113 Cal. App. 4th 181, 188 (2003). Here, defendants have met their threshold burden of demonstrating that plaintiff's state law claims arise from the type of constitutionally protected speech and petition activity protected by California Code of Civil Procedure section 425.16. Defendants are being sued because of actions taken or not taken with respect to the eminent domain process and the condemnation proceeding which are protected speech. Thus, plaintiff's state law claims meet the first prong of the anti-SLAPP statute.

### b. Probability of Prevailing on the Merits

Once defendants have satisfied their initial burden of demonstrating the targeted actions are ones arising from protected activity, plaintiff "must demonstrate that the complaint is both legally sufficient and supported by a sufficient *prima facie* showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited." *Navellier,* 29 Cal. 4th at 88-89. Thus, even though defendants have made the threshold showing that plaintiff's action

is one arising from statutorily protected activity, plaintiff may defeat the anti-SLAPP motion by establishing a probability of prevailing on her claims. *Navellier*, 29 Cal. 4th at 95. To satisfy this prong, the plaintiff must "state[ ] and substantiate[ ] a legally sufficient claim." *Rosenthal v. Great Western Fin. Securities Corp.*, 14 Cal. 4th 394, 412 (1996).

As the *Wilson* Court further explained:

> In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant; though the court does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim.

*Wilson v. Parker, Covert & Chidester,* 28 Cal. 4th 811, 821 (2002) (citing § 425.16(b)(2)).

### 1. Fraud; Fraud and Deceit by Suppression of Fact

Plaintiff's fraud claims are based on defendants' alleged failure to provide relevant documents during the condemnation action, and misrepresentations to the jury and plaintiff's counsel during the condemnation action. (FAC, ¶¶ 24-26, 29, 30, 32, 33, 36, 37 and 48). Plaintiff further asserts that her fraud claims are based upon defendants' failure to honor a letter agreement executed two weeks prior to the commencement of the condemnation action. As discussed above, the letter agreement provided defendants access to her property to conduct perc tests related to the eminent domain proceedings and defendants agreed to disclose those tests results to plaintiff. Defendants argue that plaintiff's state law claims, including fraud and fraud and deceit by suppression fact, are barred by the *Noerr-Pennington* doctrine and the California litigation privilege, California Civil Code section 47(b)

The California litigation privilege defines a "privileged publication" in relevant part as: "(b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . ." CAL. CIV. CODE § 47(b). California courts have formulated a general rule, finding the litigation privilege "applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other

participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990). The California Supreme Court in *Albertson v. Raboff,* 46 Cal. 2d 375, 380 (1956), explained the purpose of this litigation privilege as "afford[ing] litigants the utmost freedom of access to the courts to secure and defend their rights without fear of being harassed by actions for defamation." Courts have broadly defined this litigation privilege to cover:

> [A]ny publication . . . that is required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked.... Thus, it is not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affidavits. If the publication has a reasonable relation to the action and is permitted by law, the absolute privilege attaches.

*Id.* at 380-81; *see also Blanchard v. DIRECTV, Inc.*, 123 Cal. App.4th 903, 919 (2004). "It is the subject matter or context of the misstatement, not the isolated misstatement itself, which must control whether a communication has 'some connection or logical relation to the action.'" *Sacramento Brewing Co. v. Desmond, Miller & Desmond*, 75 Cal. App.4th 1082, 1089-90(1999), quoting *Silberg*, 50 Cal.3d at 212.

Defendants correctly argue that the letter agreement upon which plaintiff bases her fraud allegations is reasonably related to the condemnation action even though it occurred approximately two weeks prior to the commencement of the eminent domain process. Under California's Code of Civil Procedure, a public agency may seek an owner's consent to enter and test the property in the course of the eminent domain process. *See* Cal. Code Civ. Proc. §§ 1245.010, 1245.020. The Court must conclude that the letter agreement was in furtherance of the eminent domain action and therefore, the litigation privilege bars plaintiff's fraud claims. Accordingly, plaintiff cannot demonstrate a probability of prevailing on the merits of the fraud claims. *See Briggs v. Eden Council for Hope & Opportunity*, 19 Cal. 4th 1106, 1115 (1999); *Navarro v. IHOP Props., Inc.*, 134 Cal. App. 4th 834, 843-44 (2005). Defendants' motion to strike plaintiff's fourth and fifth causes of action is appropriately granted.

### 2. Spoliation of Evidence

Defendants correctly note that California does not recognize the tort of spoliation of

evidence when the spoliation was or should have been discovered before the conclusion of litigation. In *Cedars-Sinai Medical Center v. Superior Court,* 18 Cal.4th 1, 4 (1998) and in *Temple Community Hospital v. Superior Court,* 20 Cal.4th 464, 466 (1999), the courts held that there is no separate tort for the intentional spoliation of evidence. "This conclusion [is] consistent with the philosophy that there should be no litigation-related torts other than malicious prosecution." *Temple Community Hospital,* 20 Cal. 4th at 471. Thus, tort claims also may not be maintained for concealment or withholding of evidence. *Cedars-Sinai,* 18 Cal. 4th at 10. Moreover, courts have determined that there is no tort for negligent spoliation of evidence. *Coprich v. Superior Court,* 80 Cal. App.4th 1081 (2000); *Lueter v. State of California,* 94 Cal. App.4th 1285, 1289 (2002); *but see, Penn v. Prestige Stations, Inc.* 83 Cal. App.4th 336, 344-345 (2000). Moreover, as the trial and appellate courts determined after examining plaintiff's evidence in support of her motion for new trial, defendants did not withhold evidence from plaintiff and that plaintiff could have discovered the evidence during discovery and before the conclusion of litigation. *See* Defendants' Exh. 2 at 12, Decision of the Court of Appeal. Therefore, plaintiff has not made a showing of a legally sufficient claim to sustain a favorable judgment even if the evidence submitted by the plaintiff is credited. Accordingly, this claim must be stricken under §425.16.

### 3. *Prima Facie* Tort

Defendants contend that *prima facie* tort is not recognized in California citing *Della Penna v. Toyota Motor Sales, U.S.A., Inc.,* 11 Cal. 4th 376, 385-93 (1995). Moreover, because this claim arises out of conduct that occurred in furtherance of the condemnation action, defendants contend correctly that this claim is barred by the *Noerr-Pennington* doctrine and California's litigation privilege. Nevertheless, plaintiff argues that the *prima facie* tort claim is appropriately alleged and supported relying on the case of *City of Los Angeles v. Decker,* 18 Cal. 3d 860 (1977). In *Decker,* the court reversed an eminent domain judgment and ordered a new trial because of admitted discovery misconduct by the defendant city. *Id.* at 871. *Decker,* however, does not support a separate action against legal counsel for alleged discovery irregularities. Rather, *Decker* supports the granting of a motion for new trial where there was

admitted discovery abuse brought to the attention of the trial court.

As in *Decker*, plaintiff here sought a new trial based on alleged withholding of discovery materials. The trial court reviewed plaintiff's claim and denied her motion for new trial finding no wrongdoing on the part of defendants. The denial of her motion for new trial was upheld by the court of appeals. Again, plaintiff has failed to present a legally sufficient claim to support a favorable judgment and plaintiff's *prima facie* tort claim must be stricken under the anti-SLAPP statute.

## Conclusion

Based on the foregoing, **IT IS ORDERED** granting with prejudice defendants' motion to dismiss with prejudice plaintiff's first, second and third causes of action.

**IT IS FURTHER ORDERED** granting defendants' motion to strike fourth, fifth, sixth and seventh causes of action.

**IT IS SO ORDERED.**

Dated: 3/28/07

M. JAMES LORENZ
UNITED STATES DISTRICT JUDGE

COPY TO:

HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL