UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN BROWN KEARNEY,<br><br>    Plaintiff,<br><br>v.<br><br>FOLEY AND LARDNER, *et al.*,<br><br>    Defendants. | Civil No. 05-CV-2112-L(LSP)<br><br>**ORDER GRANTING MOTION TO DISMISS THE SECOND AMENDED COMPLAINT [doc. #106] and GRANTING LEAVE TO AMEND THE RICO CLAIM** |

Defendants Foley & Lardner, Gregory V. Moser, and Larry L. Marshall (collectively "Foley defendants") move to dismiss plaintiff's second amended complaint ("SAC"). The motion has been fully briefed and considered without oral argument. For the reasons set forth below, the Court enters the following decision.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff is the former owner of a 52.06 acre parcel of land in Ramona, California. The Ramona Unified School District ("District" or "RUSD") board adopted a resolution declaring it necessary to acquire plaintiff's property through eminent domain proceedings for construction of a new school. Defendants include the law firm of Foley and Lardner, LLC, and two individuals, Moser and Marshall, who were Foley partners during the relevant time and who represented the

District in the eminent domain action. Defendant Michael T. McCarthy[1] was an assistant superintendent of the RUSD. The District was granted an order authorizing it to take possession of the property on December 29, 2000.

The condemnation trial began on April 29, 2002, and ended on May 9, 2002. At issue in the trial was the fair market value of the property, which is defined as the highest price on the date of valuation that would be agreed to by the seller. (CAL. CODE CIV. P. § 1263.320). The fair market value is determined by residential use of the property and how many buildings could be built on the property. The number of buildings supportable on the property is dependent upon the number of septic systems permitted which is dependent upon how well the soil would percolate. (FAC ¶ 28). After the presentation of witnesses and evidence, the jury awarded plaintiff $953,000.00 as the fair market value of her property.

Soon thereafter, plaintiff filed a motion for new trial contending that the District's counsel had wrongfully argued that the District had not performed percolation ("perc") tests on her property even though the District had expended money to conduct such a test. Plaintiff's motion was denied with the trial court noting there was no evidence that the District withheld any information from plaintiff. Plaintiff appealed the decision denying her motion for a new trial. On March 3, 2004, the California Court of Appeal, Fourth Appellate District, affirmed the judgment of the Superior Court.

During the time plaintiff's appeal was pending, she filed a motion to set aside the judgment and for a new trial on the ground that the District and its counsel had concealed evidence of additional perc tests. The trial court denied plaintiff's motion finding it had no jurisdiction because of plaintiff's then-pending appeal.

Thereafter, plaintiff filed another motion for reconsideration of the trial court's order denying its motion to set aside the judgment. Again the court denied the motion for lack of jurisdiction.

Plaintiff filed a notice of appeal challenging the motion to set aside the judgment and the

---

[1] Defendant McCarthy also filed a motion to dismiss the SAC that is considered in a separate Order.

motion for reconsideration. The appeal was styled as a petition for writ of *error coram vobis*. The court of appeals took up all the appellate matters and affirmed the judgment denying plaintiff's motion for a new trial; affirmed the denial of the motion to set aside the judgment; and denied the appeal for *writ of coram vobis*. The court of appeals denied a petition for rehearing. Plaintiff then petitioned the California Supreme Court for review. On May 19, 2004, the Supreme Court denied review.

Plaintiff filed the present action on November 14, 2005. On January 20, 2006, plaintiff filed a First Amended Complaint in this Court alleging causes of action for Racketeer Influenced and Corrupt Organizations Act ("RICO"); conspiracy to violate RICO under section 1962(c); 42 U.S.C. § 1983; false promise; fraud and deceit; spoliation of evidence; and *prima facie* tort against defendants. Defendants filed motions to dismiss. The Court dismissed the federal causes of action based upon the *Noerr-Pennington* Doctrine and the state law causes of action. Plaintiff appealed the decision.

The Ninth Circuit affirmed dismissal of plaintiff's state law causes of action but reversed the dismissal of the federal claims finding that the *Noerr-Pennington* doctrine's sham litigation exception applied to plaintiff's claims thereby preventing the immunization of defendants' petitioning conduct. *Kearney v. Foley & Lardner*, 590 F.3d 638 (9th Cir. 2009). The action was remanded to consider plaintiff's federal law claims. After remand, plaintiff filed a second amended complaint ("SAC") to which the Foley defendants filed the present motion to dismiss.

## DISCUSSION

**A.     Section 1983 Claim**

    **1.     Acting Under Color of State Law**

The Foley defendants move to dismiss plaintiff's 42 U.S.C. § 1983 claim for "failure to state a claim upon which relief may be granted." FED. R. CIV. P. 12(b)(6). A complaint may be dismissed as a matter of law if it lacks a cognizable legal theory or states insufficient facts under a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984).

The factual allegations of a complaint must be "enough to raise a right to relief above the

speculative level." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). A plaintiff must plead more than conclusory allegations to show "plausible liability" and avoid dismissal. *Id.* at 1966 n. 5. The pleading standard of Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and a complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Twombly*, 127 S. Ct. at 1966).

In determining the propriety of a Rule 12(b)(6) dismissal, a court may not look beyond the complaint for additional facts, *e.g.,* facts presented in plaintiff's memorandum in opposition to a defendant's motion to dismiss or other submissions. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003); *Parrino v. FHP, Inc.,* 146 F.3d 699, 705-06 (9th Cir. 1998); *see also* 2 MOORE'S FEDERAL PRACTICE, § 12.34[2] (Matthew Bender 3d ed.) ("The court may not . . . take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

Section 1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States. 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of State law." *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006). A private citizen generally does not act under color of state law. *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Nor do private attorneys act under color of state law based upon services they perform in connection with a lawsuit. *Briley v. State of California*, 564 F.2d 849, 855-56 (9th Cir. 1977); *Szijarto v. Legeman*, 466 F.2d 864 (9th Cir. 1972). But "a private individual may be liable under § 1983 if she conspired or entered joint action with a state actor." *Franklin v. Fox*, 312 F.3d 423, 441 (9th Cir. 2002); *see also Dennis v. Sparks*, 449 U.S. 24 (1980)(private persons who conspire with state officials act under color of state law for purposes of § 1983 action).

"[S]tate action may be found if, though only if, there is such a 'close nexus between the State and the challenged action' that seemingly private behavior 'may be fairly treated as that of

the State itself.'" *Brentwood Academy v. Tennessee Secondary School Athletic Association*, 531 U.S. 288, 295 (2001)(quoting *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351. The Ninth Circuit has considered "four tests for determining whether a private individual's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test." *Rimac v. Duncan*, 319 Fed. Appx. 535 (9th Cir. 2009)(quoting *Franklin v. Fox*, 312 F.3d 423, 445 (9th Cir. 2002). The joint action test is relevant here. Plaintiff alleges that all of the defendants, state and private, have engaged in a conspiracy to violate her civil rights: "Plaintiff alleges that Defendants acted as a joint <u>participant</u> with the State in an effort to advance the State's interest in paying as little for Plaintiff's property as it could." Opp. at 9.

Defendants contend that as attorneys for the District, they did not act under color of state law in that they had no personal interest in the case and they did not advance any personal goals. Instead, they merely performed their role as outside litigation counsel for the District.

Bare allegation of joint action between state officials and private persons will not overcome a motion to dismiss civil rights claim against private persons. A plaintiff must allege facts tending to show that the private persons acted under color of state law or authority. 42 U.S.C.A. § 1983. Viewing the allegations in the light most favorable to plaintiff, the SAC sufficiently alleges joint action between the District and defendants in an effort to prevent plaintiff from obtain the fair value of her property. *See Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir.1989) (a civil conspiracy under § 1983 demonstrates an agreement sufficient to show joint action). The current allegations in the SAC are sufficient under *Twombly* and *Iqbal* to survive a motion to dismiss.

### 2.  Statute of Limitations

But the Foley defendants also contend plaintiff's 42 U.S.C. § 1983 cause of action must be dismissed as time barred under the statute of limitations. "A motion to dismiss based on the running of the statute of limitations period may be granted only 'if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove the statute was tolled.'" *Supermail Cargo, Inc. v. United States*, 68 F.3d 1204, 1206-07 (9th Cir. 1995),

quoting *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). The untimeliness must appear beyond doubt on the face of the complaint before a claim will be dismissed as time-barred. *See Supermail Cargo*, 68 F.3d at 1206-07.

Section 1983 takes its limitations period from the forum state's statute of limitations for personal injury torts, *see Wilson v. Garcia*, 471 U.S. 261, 276 (1985), which in California is two years, *see Maldonado v. Harris*, 370 F.3d 945, 954 (9th Cir. 2004). Although state law governs the length of the applicable limitations period, federal law governs the accrual of a Section 1983 claim. *Wallace v. Kato*, 549 U.S. 384, 388 (2007) ("the accrual date of a § 1983 cause of action is a question of federal law that is not resolved by reference to state law"); *see also Canatella v. Van De Kamp*, 4 86 F.3d 1128, 1133 (9th Cir. 2007). "Under federal law, the limitations period accrues when a party knows or has reason to know of the injury which is the basis of the cause of action." *Kimes v. Stone*, 84 F.3d 1121, 1128 (9th Cir. 1996) (citation and quotation marks omitted); *Lukovsky v. City and County of San Francisco,* 535 F.3d 1044 (9th Cir. 2008); *Johnson v. State of California*, 207 F.3d 650, 653 (9th Cir. 2000) (*per curiam*).

Here, plaintiff argues that the limitation's period did not begin to run until after all the appeals of her eminent domain case were completed, *i.e.*, "Plaintiff's claim did not accrue until she incurred appreciable and actual damages." (Opp at 11.) But the cases plaintiff relies upon occurred in the takings context. For example, in *Levald, Inc. v. City of Palm Desert,* 998 F.2d 680, 687 (9th Cir. 1993), the court held that "[s]o long as the state provides 'an adequate process for obtaining compensation,' no constitutional violation can occur until just compensation is denied." But in *Levald,* the question was whether there had even been a taking. In the present case, there was no question that a taking had occurred and plaintiff was entitled to be paid just compensation. The proceedings in state court were intended to provide the fair amount of compensation to which plaintiff was entitled.

Plaintiff's rights were allegedly violated when she learned that defendants had favorable perc test results that she did not receive prior to trial. Thus, plaintiff's claim accrued at the earliest when the judgment was entered in state court awarding her compensation she believed to be inadequate or at the latest in November 2002, when she received the perc test results. Plaintiff

cannot assert that the Foley defendants' alleged violation of her constitutional rights occurred when she exhausted her appeals. Even under the later November 2002 date of accrual, plaintiff's § 1983 claim is time barred because she did not file this action until November 14, 2005.

But plaintiff contends that tolling should be applied to allow her § 1983 claim to go forward. There are two related equitable doctrines that may toll a limitations period: equitable tolling and equitable estoppel.[2] *Lukovsky v. City and County of San Francisco*, 535 F.3d 1044, 1051 (9th Cir. 2008). "'Equitable tolling' focuses on 'whether there was excusable delay by the plaintiff: If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff can gather what information he needs.'" *Id.* (quoting *Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002)).

Also, federal courts generally apply the forum state's law regarding equitable tolling. *Fink v. Shedler*, 192 F.3d 911, 914 (9th Cir. 1999). In order to be entitled to equitably toll a statute of limitations under California law: (1) she must have diligently pursued his claim; (2) her situation must be the product of forces beyond her control; and (3) the defendants must not be prejudiced by the application of equitable tolling. *See Hull v. Central Pathology Serv. Med. Clinic,* 28 Cal. App.4th 1328, 1335 (Cal. Ct. App. 1994); *Addison v. State of California*, 21 Cal.3d 313, 316-17 (Cal.1978); *Fink*, 192 F.3d at 916.

Plaintiff has failed to plead any facts which would support the equitable tolling of her claim. *See Cervantes v. City of San Diego*, 5 F.3d 1273, 1277 (9th Cir. 1993). It is clear that plaintiff knew of the existence of a possible claim against the Foley defendants within the limitations period when she obtained the perc test in November 2002, and she was solely in control of the situation once she obtained those results. Thus, plaintiff's Section 1983 claim must be dismissed with prejudice as barred by the two-year statute of limitations.

---

[2] Equitable estoppel "focuses primarily on the actions taken by the defendant in preventing a plaintiff from filing suit." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000). Plaintiff does not argue that equitable estoppel is applicable in the present case.

**B.     RICO Claim**

"The elements of a civil RICO claim are as follows: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc., E.I. Dupont de Nemours & Co.*, 431 F.3d 353, 361 (9th Cir. 2005) (citation and quotation marks omitted), *cert. denied*, 547 U.S. 1192 (2006). "To state a RICO claim, one must allege a 'pattern' of racketeering activity, which requires at least two predicate acts." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir.2008) (citations omitted). A plaintiff must also show that the injury to his business or property was proximately caused by the prohibited conduct and that he has suffered a concrete financial loss. *Chaset v. Fleer/Skybox Int'l, L.P.*, 300 F.3d 1083, 1086 (9th Cir. 2002).

    **1.     Participation in the Operation or Management of the Enterprise**

RICO "protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful . . . activity is committed.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164-65 (2001)."[T]o establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person'; and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Id.* at 161. A RICO "enterprise" includes "any individual, partnership, corporation, association, or other legal entity, or any union or group of individuals associated in fact although not a legal entity. 18 U.S.C. § 1961(4). Thus, an enterprise may be a legal entity, such as a corporation, or may be "a group of persons associated together for a common purpose of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 583 (1981). An associated-in-fact enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. 583; *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir.), *cert. denied*, 2007 U.S. Lexis 115900 (2007); *see also Rae v. Union Bank*, 725 F.2d 478, 481 (9th Cir.1984).

In the present case, plaintiff alleges that the District is the RICO enterprise and the Foley defendants – a law firm and two partners at the firm – are the persons required under the RICO statute. SAC ¶¶ 44, 46.  Plaintiff does not contend that the District and the Foley

defendants are an "associated in fact" RICO enterprise. *See United States v. Blinder*, 10 F.3d 1468, 1473-74 (9th Cir.1993)*; see also Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 353 (9th Cir. 2005)(DuPont and the law firms hired to defend it in lawsuits brought by Living Designs could be an associated-in-fact enterprise).

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce*, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs* through a pattern of racketeering activity or collection of an unlawful debt." 18 U.S.C. § 1962(c)(emphasis added). In *Reves v. Ernst & Young,* 507 U.S. 170 (1993), the Court looked at the phrase "conduct or participate, directly or indirectly, in the conduct of such enterprises's affairs" and concluded that for RICO liability to attach "one must participate in the operation or management of the enterprise itself." *Id.* at 179.  The *Reves* Court noted, however, that  "RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." *Id.* (emphasis in original).

In *Baumer v. Pachl*, 8 F.3d 1341(9th Cir. 1993), the defendant, an attorney, was alleged to have conducted or participated in a RICO enterprise by preparing two letters and a partnership agreement and providing assistance with a bankruptcy proceeding when he sent two letters.  The Court found that Pachl never held any formal position in the enterprise, did not play any part in directing the affairs of the enterprise and his role was limited to providing legal services to the limited partnership and EPA.

The Foley defendants argue that plaintiff fails to allege that they had any involvement in managing or directing the District's affairs concerning the valuation of plaintiff's property. The SAC alleges that Moser was the General Counsel to the District and was a Foley partner. SAC ¶¶ 3, 11. Defendants correctly note that providing legal services does not constitute the operation or management of a RICO enterprise. *Walter v. Drayson*, 538 F.3d 1244, 1246 (9th Cir. 2008). And as outside legal counsel for the District, defendants contend that they could not participate in the operation or management of the District because the District is a state agency controlled by its board of directors and the board may only delegate certain powers or duties to its officers

or employees.

But plaintiff contends that defendants satisfy the "operation or management" test because they provided their client, the District/Enterprise, with "assistance and active participation" in "implementing decisions of upper management." Opp. at 15. Plaintiff argues that "Defendants directed the enterprise's affairs by knowingly implementing decisions of upper management, . . . *Id.* The SAC's allegations do not provide essential facts showing that counsel acted in any manner outside that of providing legal services or that defendants took a role in the operation or management of the District. Preparing the Agreement for Purchase of Real Property, obtaining plaintiff's permission to enter her property, and the like do not provide a sufficient factual basis for showing the defendants were operating or managing the District. Rather, based on the allegations in the SAC, the District's upper management was implementing its decisions with the assistance and advice of counsel but this is insufficient to state a RICO claim concerning defendants' participation in the operation or management of the alleged District/Enterprise.

The current allegations in the SAC are not "enough to raise a right to relief above the speculative level" with respect to defendants' participation in the operation or management of the District. *Twombly*, 127 S. Ct. at 1965. Plaintiff will be given leave to amend the complaint to allege non-conclusory facts to show "plausible liability." *Twombly*, 127 S. Ct .at 1966 n. 5.

### 2. Pattern of Racketeering Activity

A pattern of racketeering activity "is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise." *Odom v. Microsoft Corp.,* 486 F.3d 541, 549 (9th Cir. 2007) (en banc). There must be "at least two acts of racketeering activity" within ten years of one another in order to constitute a "pattern." 18 U.S.C. § 1961(5). "[W]hile two predicate acts are required under the Act, they are not necessarily sufficient." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). Rather, "[a] 'pattern' of racketeering activity also requires proof that the racketeering predicates are related and 'that they amount to or pose a threat of continued criminal activity.'" *Id.* (quoting in part *H.J. Inc. v. Northwestern Bell Tel. Co.*, 492 U.S. 229, 239 (1989)). A pattern in not formed by "sporadic activity." *H.J. Inc.*, 492 U.S. at 239. The factor of continuity plus relationship combines to produce a pattern.

*Id.*

Defendants argue that Kearney has not sufficiently alleged a pattern of racketeering activity because there is only a single act of discovery misconduct alleged. But plaintiff alleges several distinct acts including the false promise to provide her with perc results in order to gain access to her property, the ongoing concealment of the perc test results, and the misinformation given to the trial court about the existence of an additional District-ordered perc test. These allegations are sufficient to show a pattern.

Additionally defendants argue that plaintiff has not alleged any possible threat of any continuing racketeering activity. "A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substantial period of time." *Id.* at 242. Plaintiff has adequately alleged a closed-ended continuity by alleging a series of related acts occurring over a two-year period.

### 3     RICO Causation

Plaintiff contends that the Foley defendants' alleged RICO violations were both the "but for" cause of her injury and the proximate cause of her injury. (Opp. at 12) According to plaintiff, if defendants had not engaged in the alleged wrongful conduct – the nondisclosure of the favorable-to-plaintiff perc testing result – the valuation of the property at trial would have been different. She also alleges that she reasonably relied on defendants' misrepresentations concerning the District's perc test and results in allowing the earlier perc test at trial. Like defendant McCarty, the Foley defendants argue that plaintiff could have avoided the injury if she had taken a different course of action. But if a defendant's conduct was a substantial factor in causing the plaintiff's injury, a defendant will not be absolved from liability merely because other causes contributed to the injury. *See Holmes v. SEC Investor Prot. Corp.*, 503 U.S. 258, 269 (1992).

Here, plaintiff has adequately pleaded RICO causation against the Foley defendants.

### D.    RICO Conspiracy claim

Defendants argue plaintiff cannot state a claim for RICO conspiracy because she has not adequately pleaded RICO violations. Because the Court will dismiss plaintiff's RICO claim

without prejudice, her RICO conspiracy claim will also be dismiss without prejudice.

## Conclusion

Based on the foregoing, **IT IS ORDERED** granting the Foley defendants' motion to dismiss the SAC as follows:

1. Plaintiff's 42 U.S.C. § 1983 claim is dismissed with prejudice as time barred; and

2. Plaintiff's RICO and RICO conspiracy claims are dismissed without prejudice as set forth above.

**IT IS FURTHER ORDERED** that plaintiff may file a Third Amended Complaint to set forth RICO and RICO conspiracy claims that sufficiently alleges the Foley defendants' participation in the operation or management of the District enterprise. The TAC shall be filed on or before April 18, 2011.

**IT IS SO ORDERED.**

DATED: March 28, 2011

M. James Lorenz
United States District Court Judge

COPY TO:

HON. LOUISA S. PORTER
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL