UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOAN BROWN KEARNEY,<br><br>　　　　Plaintiff,<br>v.<br><br>FOLEY AND LARDNER, *et al.*,<br><br>　　　　Defendants. | Case No.: 05-CV-2112-AJB-MDD<br><br>**ORDER GRANTING MOTION TO DISMISS THIRD AMENDED COMPLAINT**<br><br>**[Doc. No. 126]** |

Defendants Foley & Lardner, Gregory v. Moser, and Larry L. Marshall (collectively "Attorney Defendants") move to dismiss plaintiff's Third Amended Complaint. The Plaintiff filed an opposition, [Doc. No. 132], and the Defendants filed a reply, [Doc. No. 134]. Based upon the parties moving papers, arguments of counsel made at the hearing on June 20, 2011, and for the reasons set forth herein, the Defendants' motion to dismiss is hereby GRANTED.

### *Factual Background*

Unless otherwise specified, the following facts are drawn from Plaintiff's Third Amended Complaint ("TAC").

Plaintiff is the former owner of a 52.06-acre parcel located in Ramona, California. In June of 2000, the Ramona Unified School District ("RUSD") initiated a condemnation process to acquire that property through eminent domain pursuant to Government Code § 66499.34. Defendants include the law firm of Foley and Lardner, LLC ("F&L"), and two individuals, Moser and Marshall, who were F&L

partners during the relevant time and who represented the RUSD in the eminent domain action. Defendant McCarthy was the Business Manager of RUSD. In preparation for the eminent domain proceeding, RUSD hired Construction Testing & Engineering ("CTE") to conduct a septic system, including percolation testing, of Plaintiff's land, and to prepare a report with the results. Those results would show how many residential plots the land could support, thus determining the land's value.

CTE entered Plaintiff's property in December of 2002 to conduct the perc test without her approval. On December 26, 2002 the RUSD and Plaintiff reached an agreement in which she would consent for the RUSD to conduct perc testing in exchange for copies of any reports prepared from the testing. In late January and early February 2001, CTE completed the percolation testing on the Property, however, it did not prepare a formal report of the results. Plaintiff, through her counsel, sent broad document requests to RUSD, but did not receive any test results though other documents produced suggested testing had been done.

The trial to determine the value of Plaintiff's property lasted from April 29 to May 9, 2002. Plaintiff's expert testified that the parcel could support up to sixteen residential lots based upon the percolation test performed in 1996. This gave the property a value of $1.4 million. RUSD's expert appraised the property at $850,000 based upon the understanding that the parcel could support six to eight lots. Defendant Marshall, one of RUSD's attorneys, said in trial that no new percolation testing had been performed. The jury awarded Plaintiff $935,000 in compensation.

After trial, Plaintiff learned from a school expense itemization report that percolation testing had in fact been performed. She submitted a California Public Records Act ("CPRA") request in May 2002, but nothing was produced. RUSD said it did not possess anything that had not been provided during discovery. It also said that, to the extent any documents existed in the offices of the professionals it employed, the documents were exempt from CPRA. Plaintiff moved for a new trial based on the itemization rerpot. The state trial court denied her motion. Plaintiff appealed.

While the appeal was pending, Plaintiff made another CPRA request and exchanged letters with Marshall. Marshall said RUSD would waive its CPRA exemption. On November 12, 2002, it produced a copy of the testing results, stating that the document was not in RUSD's possession and was obtained only after the trial. Plaintiff had RUSD's experts review the report, and they determined that the results

were significant to valuation and would support a higher value for the property. Plaintiff filed more motions for a new trial which were denied on jurisdictional grounds. She appealed those as well. On March 3, 2004, the California Court of Appeal issued its ruling denying her relief. The California Supreme Court denied review.

### *Procedural Background*

Plaintiff commenced the present action on November 14, 2005 in federal court against the law firm that represented RUSD in the state proceedings, two of the firm's attorneys, and RUSD's business manager. Her complaint alleged federal causes of action under 18 U.S.C. §§ 1961-1968, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), conspiracy to violate RICO, and 42 U.S.C. § 1983. She also had many state causes of actions. Defendants filed motions to dismiss and the District Court granted them. Her federal claims were dismissed under the Noerr-Pennington doctrine because the conduct on which Plaintiff relied to establish liability was incidental to First Amendment protected petitioning activity and the complaint did not fit into the "sham" exception. The district court also dismissed her state causes of actions under California's anti-SLAPP statute.

Plaintiff appealed and the Ninth Circuit accepted review. The Ninth Circuit found that the "sham exception" applied to her claims which prevent the Defendants from claiming immunity. *Kearney v. Foley & Lardner*, 590 F.3d 638 (9th Cir. 2009). The Ninth circuit affirmed the dismissal of Plaintiff's state law claims and remanded the case back to the District Court to entertain Plaintiff's federal RICO claims. After remand, Plaintiff filed a second amended complaint ("SAC"). Defendants moved to have the SAC dismissed. [Doc. No. 106.] That motion was granted with leave for Plaintiff to amend her RICO claim. [Doc. No. 122.] Plaintiff filed her Third Amended complaint ("TAC") on April 4, 2011, in which she sought relief based on two causes of actions against Defendants Foley and Lardner, LLP. (F&L), Gregory Moser and Larry Marshall (Attorney Defendants), as well as Michael McCarty. The first cause of action is for violation of 18 U.S.C. § 1963(c), the Racketeer Influence and Corrupt Organization Act (RICO), against all named defendants. The second cause of action is for conspiracy to violate RICO against Defendant F&L. The Honorable Judge Lorenz, who previously presided over this case, issued a recusal on April 26, 2011. Defendant F&L and Attorney Defendants move to dismiss the TAC. For the following reasons, this Court **GRANTS** the motion to dismiss.

*__Legal Standard__*

A motion to dismiss under Rule 12(b)(6), tests the legal sufficiency of the pleadings, and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Novarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory," or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). However, a complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl.Corp. v. Twombly*, 550 U.S. 544, 470 (2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *Ashcroft v. Iqbal,* --U.S--, 129 S. Ct. 1937, 1945-50, 173 L.Ed. 2d 868 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S. Ct. at 1929. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

*__Discussion__*

*I. Racketeer Influenced and Corrupt Organizations Act ("RICO")*

RICO "protects the public from those who would unlawfully use an 'enterprise' (whether legitimate or illegitimate) as a 'vehicle' through which 'unlawful . . . activity is committed.'" *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 164-65 (2001).

The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property." *Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*, 431 F.3d 535, 561 (9th Cir. 2005) (citation and quotation marks omitted). "To state a RICO claim, one must allege a 'pattern' of

racketeering activity, which requires at least two predicate acts." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1116 (9th Cir. 2008) (citations omitted).

Furthermore, "[to] establish liability under § 1962(c) one must allege and prove the existence of two distinct entities: (1) a 'person' and (2) an 'enterprise' that is not simply the same 'person' referred to by a different name." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 161 (2001). The term "enterprise" is defined in 18 U.S.C. § 1961(4) as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." Thus, an enterprise may be a legal entity, such as a corporation, or may be "a group of persons associated together for a common purpose of engaging in a course of engaging in a course of conduct." *United States v. Turkette*, 452 U.S. 576, 582 (1981). This type of "continuing unit that functions with a common purpose" constitutes an associated-in-fact enterprise. *Boyle v. United States*, 129 S.Ct. 2237, 2240 (2009). An associated-in-fact enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." *Turkette*, 452 U.S. 583; *Odom v. Microsoft Corp.*, 486 F.3d 541, 552 (9th Cir. 2007).

In the present case, Plaintiff alleges that the "non-party RUSD" constituted a RICO enterprise within the meaning of 18 U.S.C. § 1961(4)," and is "an enterprise engaged in, or its activities affect, interstate and/or foreign commerce." (TAC ¶¶ 52-53). Plaintiff alleges that Defendant McCarty and the Attorney Defendants are the "persons" under 18 U.S.C. § 1961(3). (TAC ¶ 54). She further alleges that they were associated with the RICO enterprise RUSD and either "(1) conducted the affairs of the enterprise or (2) participated, directly or indirectly, in the conduct of the affairs of the enterprise . . . " *Id.* Plaintiff goes on to cite a number of events that she alleges were Defendant's predicate acts establishing a pattern of racketeering activity with a "common purpose to defraud Plaintiff and prevent her from receiving the fair value of her property." (TAC ¶¶ 56-58). Plaintiff states that the Attorney Defendants "played a part in directing the affairs of RUSD" and were given "significant control" over decisions regarding what evidence to present or conceal in the eminent domain proceedings. (TAC ¶¶ 59-60).

### A. Participation in the Operation or Management of the Enterprise

Section 1962(c) makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate of foreign commerce, to conduct of participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt." 18 U.S.C. § 1962(c). In *Reves v. Earnst & Young*. 507 U.S. 170 (1993), the Court looked at the phrase "conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs" and concluded that for RICO liability to attach "one must participate in the operation or management of the enterprise itself." *Id.* at 179. The Court noted, however, that "RICO liability is not limited to those with a formal position in the enterprise, but *some* part in directing the enterprise's affairs is required." *Id.* (emphasis in original).

The Ninth Circuit has held that the "management and operations" test also extends to associated-in-fact enterprises. *Walter v. Drayson*, 583 F.3d 1244 (9th Cir. 2008). The *Walter* Court concluded that the structure of a client, her attorney, and her trustee could be an associated-in-fact enterprise. However to find the attorney liable for RICO violation, the Plaintiff must show that the attorney and her law firm had some part in directing the affairs of the associated-in-fact enterprise. The *Walter* Court further held that "[s]imply performing services for the enterprise does not rise to the level of direction, whether one is "inside" or "outside." *Id.* at 1249.

Attorney Defendants move to dismiss the TAC asserting that Plaintiff does not and cannot allege that Attorney Defendants participated in the operation or management of the alleged RICO enterprise as required for liability by *Reves v. Young*, 507 U.S. 170 (1993). Attorney Defendants contend that because the alleged RICO enterprise is the school district, they cannot satisfy the "operations and management" test for RICO liability. They argue that the RUSD is under the control of a board of trustees or board of education and there is no authority for a school district of its Board to contract with outside attorneys to participate in carrying out the Board's duties in the operation or management of the district. [Doc. No. 126].

Plaintiff, in her Opposition to the Motion to Dismiss, argues that the RUSD and Attorney Defendants is an associated-in-fact enterprise. [Doc. No. 132]. She relies upon *Living Designs, Inc. v. E.I Dupont de Nemours & Co.*, 431 F. 3d 353 (9th Cir. 2005) to establish that attorneys can be found liable for RICO violations. The Ninth Circuit in *Living Designs* acknowledged that Dupont and the law

firms it hired could be an associated-in-fact enterprise, and that the enterprise formed by DuPont, the law firms, and expert witnesses retained by the law firms, were separate and distinct from DuPont, the RICO "person" alleged in the complaint. *Id.* at 362. The court also noted that "even in the context of the attorney-client relationship, attorneys retain control over important functions; for example, in litigation, the attorney retains control over tactical and strategic decisions." *Id.* at 362.

This Court does not doubt that a legitimate entity, such as RUSD, and its attorneys could form an associated-in-fact enterprise under the definition set forth by 18 U.S.C. § 1961(4) and its interpretation by the Supreme Court in *Turkett*. 452 U.S., at 583. The issue for the court is if Plaintiff properly pleaded an associated-in-fact enterprise. The confusion stems from the fact that Plaintiff first alleges that "at all relevant times, non-party RUSD constituted a RICO enterprise." (TAC ¶ 52). If the RICO enterprise was the RUSD, then it is unlikely that Attorney Defendants, as outside counsel, could have had any involvement in the operation and control of the entirety of the enterprise. However, if the RICO enterprise alleged was the associated-in-fact enterprise, comprised of the RUSD and the Attorney Defendants, with the common purpose of settling the eminent domain proceedings; then it is more plausible that the Attorney Defendants could have had some direction over this eminent domain litigation enterprise.

Currently the Court finds that Plaintiff's allegations are ambiguous and fail to put Attorney Defendants on proper notice of their supposed misconduct within any enterprise. Accordingly, the Court **GRANTS** the motion to dismiss. Plaintiff will be given leave to amend to more clearly state which is the RICO enterprise she alleges to exist.

### *B. Factual Allegations*

The Court is not persuaded by Defendant Attorney's arguments that Plaintiff's factual allegations are insufficient under any characterizations. However, because the TAC is dismissed for the above reasons, it is unnecessary to go into the merits of Plaintiff's factual allegations. The merits of plaintiff's factual claims are best left to a motion for summary judgment or trial.

### *II. RICO Conspiracy Claim*

Defendants argue Plaintiff cannot state a claim for RICO conspiracy because she has not adequately pleaded RICO violations. Because the Court will dismiss Plaintiff's RICO claim without prejudice, her RICO conspiracy claim will also be dismissed without prejudice.

///

### *Conclusion*

Based on the foregoing, Defendants' motion to dismiss the TAC is hereby GRANTED without prejudice as set forth above. Plaintiff may file a Fourth Amended Complaint to set forth RICO and RICO conspiracy claims that sufficiently allege the Foley defendants' participation in the operation or management of a RICO enterprise consistent with the analysis herein. A further failure in this regard will result in a dismissal with prejudice. The Plaintiff's Fourth Amended Complaint must be *filed on or before August 15, 2011*.

**IT IS SO ORDERED**

DATED: July 22, 2011

_____
Hon. Anthony J. Battaglia
U.S. District Judge